Opinion issued November 9, 2006 
     










In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00586-CV




HONG KONG DEVELOPMENT, INC., HAI DU DUONG, and PHUONG
TRUONG TU, Appellants

V.

KIM LOAN NGUYEN D/B/A ALPHA BAKERY, Appellee




On Appeal from County Civil Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 802024




O P I N I O N

          Appellants, Hong Kong Development, Inc. (“HKDI”), Hai Du Duong
(“Duong”), and Phuong Truong Tu (“Tu”) (collectively, “appellants”), appeal from a
judgment, rendered upon a jury verdict, in favor of Kim Loan Nguyen (“Nguyen”) for
$15,312.58 in actual damages against HKDI and Duong, jointly and severally;
$200,000 in punitive damages against each of HKDI and Duong; and $79,900 in
attorney’s fees against all three appellants, jointly and severally. We determine
whether the trial court could consolidate an appeal pending before it in a forcible-detainer suit with a suit in which Nguyen, invoking the court’s original jurisdiction,
had asserted various tort and declaratory claims. Answering that question in the
negative, we reverse the judgment and remand the case. However, because the issue
is likely to recur on remand, we also consider whether a contractual-indemnity
provision required Tu to indemnify Nguyen for Nguyen’s attorney’s fees.
Background
          Tu and Nguyen were sisters-in-law. Tu, Nguyen, and Nguyen’s sister entered
into a partnership to run a bakery and sandwich shop called Alpha Bakery. In
February of that same year, Tu and Nguyen leased space for their business in HKDI’s
shopping mall. The lease that they executed with HKDI (“the lease agreement”) listed
Tu and Nguyen as “Tenant” and contained the following provisions:
24. ASSIGNMENT AND SUBLETTING BY TENANT
24.1Tenant shall not assign this Lease, or any interest therein, . . .
without first obtaining the written consent of Landlord. . . . Any
assignment . . . without the prior written consent of Landlord shall be
void and shall, at the option of Landlord, terminate this Lease. This
Lease shall not, nor shall any interest therein, be assignable, as to the
interest of Tenant, by operation of law, without the prior written consent
of Landlord. However, it is further understood and agreed that Tenant
shall not sell, convey, or assign any interest in the corporation [sic]
without prior written approval from Landlord, and if Landlord does not
agree to the sale, conveyance or assignment of the corporation [sic],
Landlord may, at Landlord’s option, terminate this Lease.
 
. . . .
57. MISCELLANEOUS
57.2Acceptance of Rental by Landlord from Tenant or any assignee,
subtenant or other successor in interest of Tenant, or the payment or
tender of any Rental to Landlord, with or without notice, shall never be
construed as a waiver of any breach of any term, condition or covenant
of this Lease. The failure of Landlord to declare any Event of Default
upon the occurrence thereof, or any delay by Landlord in taking action
with respect thereto shall not waive such default, but Landlord shall have
the right to declare such default at any time and to take such action as
may be authorized hereunder to the extent herein provided.

Duong, HKDI’s president and owner, signed the lease agreement on behalf of HKDI.
          Tu’s and Nguyen’s relationship soured a few years later, about the time that
Nguyen and her husband, Tu’s brother, began divorce proceedings. The partners’
dispute led to a lawsuit (“the partnership suit”), and the partnership eventually went
into receivership. The jury in the partnership suit awarded Nguyen and her sister, also
a partner, 70% of the partnership; awarded Tu 30% of the partnership; and awarded
actual damages to Nguyen and attorney’s fees to Nguyen and her sister.


 In a separate
receivership sale of Alpha Bakery, Nguyen purchased the business. Final paperwork
for the sale was drawn up, including a contract assigning Tu’s lease interest to Nguyen
(“the lease assignment”), as well as a contract assigning Tu’s partnership interest to
Nguyen (“the partnership assignment”). No one obtained HKDI’s consent to the lease
assignment, despite the lease agreement’s requirement that HKDI’s written consent
be obtained as a precondition to any assignment of the leasehold interest. 
Nonetheless, Nguyen and Tu signed the documents, including the lease assignment.
          In a nutshell, Nguyen’s position in the current suit was that she and Tu had
signed the lease assignment without HKDI’s written consent under duress because the
trial court in the partnership suit had ordered them to sign it under threat of contempt. 
She also alleged that Tu’s counsel in the partnership suit, who had represented HKDI
in other matters, had implied in the partnership suit that he was representing both Tu
and HKDI and that HKDI would not object to the assignment. Nguyen also took the
position in the current lawsuit that Tu, HKDI, and Duong had conspired, for various
reasons, to have the parties execute the lease assignment without first obtaining
HKDI’s written consent so that Nguyen could be declared in default, HKDI could
evict her, and Tu could open a competing restaurant in the same mall. HKDI, Duong,
and Tu disputed the validity of Nguyen’s theories.
 
          In May 2003, HKDI notified Nguyen that she was in default under the lease
because HKDI’s consent had not been obtained and instructed her to vacate the
premises. Later that month, Nguyen sued HKDI, Duong, and Tu in Harris County
Civil Court at Law No. 3 (“the tort suit”).


 Nguyen (1) sought a declaration that the
lease assignment from Tu to Nguyen was not a breach of the lease agreement; (2)
asserted a cause of action for breach of fiduciary duty against Tu; (3) asserted a cause
of action for conspiracy against all appellants, alleging that they had conspired in
order for Tu to run Nguyen’s restaurant out of business so that Tu could operate an
allegedly competing restaurant within Hong Kong Market; and (4) sought actual
damages of “less than $100,000,” exemplary damages, attorney’s fees, and injunctive
relief. Two months later, Nguyen filed a first supplemental petition in the tort suit,
seeking a declaration—as an apparent alternative to a declaration that the lease
assignment had not breached the lease agreement—that the lease assignment was void
for having been executed under the “extreme duress” of the threat of contempt in the
partnership suit. All appellants answered, and HKDI and Duong asserted a counter-claim against Nguyen for sanctions for the filing of a frivolous lawsuit.
          In July 2003, HKDI filed suit, against both Tu and Nguyen, for forcible detainer
in a Harris County justice of the peace court, seeking possession of the leasehold
property (“the forcible-detainer suit”). See Tex. Prop. Code Ann. § 24.002 (Vernon
2000). Although the record does not show how the justice court disposed of the
forcible-detainer suit, HKDI asserts, without dispute, that it confessed judgment and
then immediately appealed to the county court.


 See Tex. R. App. P. 38.1(f) (“In a civil
case, the court will accept as true the facts stated [in the appellant’s brief] unless
another party contradicts them.”); Mullins v. Coussons, 745 S.W.2d 50, 50 (Tex.
App.—Houston [14th Dist.] 1987, no writ) (holding that rendition of agreed judgment
in justice court in forcible-detainer suit does not deprive county court of jurisdiction
to hear case, when appealed, in trial de novo). Both Tu and Nguyen answered in the
county court in the forcible-detainer suit. On October 2, 2003, Nguyen asserted
counter-claims in the forcible-detainer suit against HKDI, cross-claims against Tu, and
“cross-claims”—which were actually third-party claims—against Duong, who had
theretofore not been a party in the forcible-detainer suit.


 Nguyen alleged (1) that Tu
and Duong had tortiously interfered with her contractual relations; (2) that Tu had
breached her fiduciary duty to Nguyen; (3) that Tu, Duong, and HKDI had unfairly
competed with her; and (4) that Tu, Duong, and HKDI had conspired to evict her. On
her counter-, cross-, and third-party claims in the forcible-detainer suit, Nguyen sought
actual damages of “less than $100,000,” exemplary damages, and attorney’s fees. 
HKDI answered Nguyen’s counter-claims against it, but Duong did not. Although the
clerk’s record does not show this, HKDI and Duong assert on appeal, without
contradiction by Nguyen, that Nguyen never served Duong on her third-party claim. 
See Tex. R. App. P. 38.1(f).
          On October 10 and 15, 2003, respectively, Tu and HKDI moved in the forcible-detainer suit to strike or to sever Nguyen’s counter-claims, cross-claims, and third-party claims, arguing that the county court had no subject-matter jurisdiction to
consider these matters in a forcible-detainer suit. On October 16, 2003, Nguyen
moved in the forcible-detainer suit to consolidate the tort suit and the forcible-detainer
suit, which motion HKDI opposed in writing, while also reurging its earlier-filed
motion to strike or to sever.
          In the meantime, on October 16, 2003 in the forcible-detainer suit, Nguyen filed
her first amended counter-claim, cross-claim, and third-party claim, this time omitting
Duong as a named party. This amendment occurred before the court in the forcible-detainer suit had ruled on Nguyen’s motion to consolidate. 
          On October 23, 2003, the trial court in the forcible-detainer suit signed an order
consolidating the two lawsuits and ordering the tort suit transferred to County Civil
Court at Law No. One, the court in which the forcible-detainer suit had been filed
(“the consolidated suit”). From that point forward, Nguyen supplemented her petition
once on the day that trial began, and she was twice granted leave, over HKDI’s and
Duong’s various objections, to conform the pleadings to the evidence. One of these
post-trial amendments re-added Duong as a third-party defendant to Nguyen’s third-party claims that had been asserted in the forcible-detainer suit before consolidation. 
After consolidation, Tu also asserted a counter-claim and a cross-claim against
Nguyen for indemnity based on a provision in the lease assignment.
          By virtue of her pleadings filed in the separate suits before consolidation, and
by virtue of the pre-trial and post-trial amendments that the trial court allowed in the
consolidated suit, Nguyen pleaded the following claims, requests for relief, and
defenses in the consolidated suit:



●a declaration that the lease assignment from Tu to Nguyen was not
a breach of the lease agreement with HKDI;

 
●a declaration—as an apparent alternative to a declaration that the
lease assignment had not breached the lease agreement—that the
lease assignment was void for having been executed under the
“extreme duress” of the threat of contempt in the partnership suit;
●breach of fiduciary duty against Tu;
 
●conspiracy against all appellants, asserting that they had conspired
to evict her;
 
●tortious interference with contractual relations against Tu and
Duong;
 
●unfair competition against Tu, HKDI, and Duong;
 
●indemnity against Tu, under theories that Tu had breached a
contract and that Tu owed indemnity for attorney’s fees under the
documents signed in the partnership suit; and
 
●waiver and estoppel, as defenses to HKDI’s position that it was
entitled to possession because Nguyen had breached the lease
agreement with HKDI by virtue of the lease assignment.

          Not all of the claims went to the jury, however. The pertinent jury questions
and answers were as follows:



#

Question

Answer



1

Whether any of the following excused the
lease assignment, executed without HKDI’s
prior written consent, from Tu to Nguyen:
a.       duress
b.       waiver
c.       estoppel



 
a.       Yes
b.       Yes
c.       Yes



2

Whether HKDI breached the lease agreement

No



3

—

—



4

Whether Tu breached her fiduciary duty to
Nguyen

Yes



5

What the damages that arose from Tu’s breach
of fiduciary duty were

$0.00



6

Whether Duong wrongfully interfered with
Nguyen’s contractual relations

Yes



7

What the damages that arose from Duong’s
tortious interference were

Nguyen’s costs
to defend her
right to the
leased premises:
$49,266.66

Nguyen’s past
mental anguish:
$15,000.00



8

Whether Duong was part of a conspiracy that
damaged Nguyen (not predicated on any
question)

Yes



9

Whether HKDI was part of a conspiracy that
damaged Nguyen (not predicated on any
question)

Yes



10

Whether Tu was part of a conspiracy that
damaged Nguyen (not predicated on any
question)

No



11

Whether clear and convincing evidence
showed that Duong’s malice harmed Nguyen
(predicated on question 8)

Yes



12

—

—



13

What Nguyen’s attorney’s fees were
(predicated on question 11)

for preparation
and trial:
$73,900.00

for post-trial
motions:
$6,000.00

for appeals to
higher courts:
$0.00



14

—

—




 
          In the punitive-damages phase of trial, the jury awarded Nguyen $1 million
against Duong and the same amount against HKDI. The trial court rendered judgment
on Nguyen’s motion, which HKDI and Duong opposed in writing. The judgment
●declared that the lease assignment between Tu and Nguyen did not
breach the lease agreement with HKDI;
 
●declared that Tu had to indemnify Nguyen for Nguyen’s attorney’s
fees; 
 
●awarded Nguyen possession of the leased premises;
 
●awarded Nguyen $15,312.58 in actual damages and interest
against HKDI and Duong, jointly and severally;



 
●awarded Nguyen $79,900 in attorney’s fees against HKDI, Duong,
and Tu, jointly and severally;
 
●reduced the exemplary damages and awarded $200,000 in
exemplary damages against each of HKDI and Duong; and
 
●rendered a take-nothing judgment on HKDI’s, Duong’s, and Tu’s
claims against Nguyen.

Tu moved for judgment notwithstanding the verdict, as did HKDI and Duong. These
motions were overruled by operation of law.
HKDI and Duong’s Appeal
          HKDI and Duong view all of the questions of jurisdiction that they raise as
“fram[ing] the dispositive issue on appeal.” We agree and discuss these issues below.
A.      Our Jurisdiction to Review HKDI and Duong’s Challenges
          On appeal from a forcible-detainer judgment, we have no jurisdiction to
consider the issue of possession if, as is the case here, the disputed premises were used
for commercial purposes. See Tex. Prop. Code Ann. § 24.007 (Vernon 2000);
Carlson’s Hill Country Beverage, L.C. v. Westinghouse Rd. Joint Venture, 957 S.W.2d
951, 952–53 (Tex. App.—Austin 1997, no pet.). The prohibition to consider
possession includes consideration of any finding “essential to the issue of” or
“dependent on” possession. See Carlson’s Hill Country Beverage, L.C., 957 S.W.2d
at 953; Rice v. Pinney, 51 S.W.3d 705, 707 (Tex. App.—Dallas 2001, no pet.). The
jurisdictional matters raised by HKDI and Duong are not matters essential to the issue
of possession, and, thus, we have jurisdiction to review them. See Rice, 51 S.W.3d at
708 (“Section 24.007 does not preclude appellate review of a county court at law’s
subject matter jurisdiction” because such challenges concern county court’s “authority
to decide this case regardless of how it resolved the possession issue.”).
B.      The Trial Court’s Jurisdiction Over Nguyen’s Tort Claims

          In issue one, HKDI and Duong argue that the trial court lacked subject-matter
jurisdiction to adjudicate Nguyen’s counter-claims against HKDI, and her third-party
claims against Duong, that she had asserted in the forcible-detainer suit before
consolidation. Specifically, they argue that the county civil court at law, sitting as an
appellate court in the forcible-detainer suit, lacked jurisdiction to consider the counter-claims and third-party claims because those claims (1) exceeded the justice court’s
jurisdiction, (2) fell outside the scope of claims allowed in a forcible-detainer suit, and
(3) were impermissibly raised for the first time on appeal to the county civil court at
law. 
          Nor, according to HKDI and Duong, could the trial court “fix” the above-referenced jurisdictional problem by consolidating the forcible-detainer suit, which
had this jurisdictional problem, with the tort suit, which did not. HKDI and Duong
argue that the trial court erred in consolidating (or that it lacked jurisdiction to
consolidate) the two suits because the court’s having done so allowed Nguyen to
recover the very damages that would not have been recoverable in the forcible-detainer suit had it not been consolidated. They argue that the county civil court at
law could exercise either appellate or original jurisdiction, but not both in the same
suit. Finally, HKDI and Duong assert that, regardless of what type of jurisdiction the
county civil court at law exercised, the aggregate damages that Nguyen sought in her
claims, counter-claims, cross-claims, and third-party claims exceeded the jurisdiction
of the county civil court at law. 
          For all of the reasons stated above, HKDI and Duong argue that the trial court
erred in not severing or striking the complained-of counter-claims and third-party
claims from the forcible-detainer suit before consolidation and that it erred in
consolidating the two suits.
          1.       The Counter-Claims, Cross-Claims, and Third-Party Claims
Asserted in the Forcible-Detainer Suit Before Consolidation
 
                    a.       The Law
          “The procedure to determine the right to immediate possession of real property,
if there was no unlawful entry, is the action of forcible detainer.” Rice, 51 S.W.3d at
709; see Tex. Prop. Code Ann. § 24.002 (defining forcible detainer). Prior to
consolidation, the forcible-detainer suit was purely one for forcible detainer. 
          Justice courts have original jurisdiction over forcible-detainer suits. See Tex.
Prop. Code Ann. § 24.004 (Vernon 2000); see also Tex. Gov’t Code Ann.
§ 27.031(a)(2) (Vernon 2004). Any party dissatisfied with a justice-court judgment
in such a suit may appeal to the county court,


 in which trial is de novo. See Tex. R.
Civ. P. 749. On appeal in a forcible-detainer suit, the county court exercises appellate,
not original, jurisdiction. The county court’s appellate jurisdiction is generally
confined to the limits of the justice court (with the exception of the specific damages
noted below), and the county court has no jurisdiction over a forcible-detainer appeal
unless the justice court did. Ward v. Malone, 115 S.W.3d 267, 269 (Tex.
App.—Corpus Christi 2003, pet. denied).
          “An action of forcible entry and detainer is a special proceeding and as such is
governed by the special statutes and rules applicable thereto.” Haginas v. Malbis
Mem’l Found., 163 Tex. 274, 278, 354 S.W.2d 368, 371 (1962); accord Rice, 51
S.W.3d at 709. “Forcible entry and detainer actions are intended to provide a speedy,
summary, and inexpensive determination of the right to immediate possession of real
property.” Meridien Hotels, Inc. v. LHO Fin. P’Ship I, L.P., 97 S.W.3d 731, 737 (Tex.
App.—Dallas 2003, no pet.); see McGlothlin v. Kliebert, 672 S.W.2d 231, 232 (Tex.
1984). The Texas Rules of Civil Procedure ensure the speedy, summary, and
inexpensive nature of forcible-detainer suits. See Meridien Hotels, Inc., 97 S.W.3d
at 737; see also Tex. R. Civ. P. 739, 740, 745, 746, 748, 749 (all requiring expedited
or streamlined procedures in forcible-entry and forcible-detainer suits).
          Because of this purpose, the sole issue to be determined in a forcible-detainer
or forcible-entry suit is the entitlement to actual and immediate possession. See Tex.
R. Civ. P. 746; Haginas, 354 S.W.2d at 371. Nonetheless, the rules do vest the justice
or county courts in such suits with jurisdiction over a few other limited matters. For
example, a suit for rent may be joined with an action for forcible entry or detainer, as
long as the claim for rent falls within the justice court’s jurisdiction. Tex. R. Civ. P.
738; Haginas, 354 S.W.2d at 371. Additionally, in trial de novo on appeal to the
county court, “the appellant or appellee shall be permitted to plead and prove his
damages if any suffered for withholding or defending possession of the premises
during the pendency of the appeal,” although only the party prevailing in the county
court may recover these damages. Tex. R. Civ. P. 752. Such damages include, but are
not limited to, loss of rents during the appeal’s pendency and reasonable attorney’s
fees in the justice and county courts, and the prevailing party in the county court may
also recover costs. Id. The damages that may be sought under rule 752 are only those
“suffered as a direct result of withholding or defending possession.” Hanks v. Lake
Towne Apartments, 812 S.W.2d 625, 627 (Tex. App.—Dallas 1991, writ denied). 
Under rule 752, a party may recover the specified damages “regardless of the amount
so long as [the prevailing party] can prove such damages.” Haginas, 354 S.W.2d at
372. In other words, in a trial de novo in a forcible-detainer proceeding on appeal in
county court, a prevailing party may recover the damages allowed by rule 752 even
if the amount of those damages exceeds the amount-in-controversy limit of the county
court’s original jurisdiction. Id.
          The county and justice courts lack subject-matter jurisdiction in a forcible-detainer suit to adjudicate matters other than those listed in the immediately preceding
paragraphs. See, e.g., Krull v. Somoza, 879 S.W.2d 320, 322 (Tex. App.—Houston
[14th Dist.] 1994, writ denied) (holding that damages claims related to maintaining or
obtaining possession of disputed premises may be joined with forcible-detainer suit
and litigated in county court, but that damages for other causes of action cannot be
maintained in same suit); Hanks, 812 S.W.2d at 627 (holding that county court lacked
subject-matter jurisdiction over tenant’s counter-claims for wrongful retention of
rental security deposit that had been asserted on appeal in forcible-detainer suit);
Rushing v. Smith, 630 S.W.2d 498, 499–500 (Tex. Civ. App.—Amarillo 1982, no writ)
(holding that county court lacked subject-matter jurisdiction over cross-claims for
damages to recover for certain farming work that had been done, which damages were
unrelated to expenses in defending possession, on appeal in forcible-detainer suit).


 
This result obtains because “[t]he jurisdiction of the County Court is of a dual nature[:]
one original and the other appellate from the Justice Court.” Neal v. Beck Funeral
Home, 131 S.W.2d 778, 779 (Tex. Civ. App.—Fort Worth 1939, writ dism’d) (holding
same in appeal to county court from justice court in suit other than one for forcible
detainer). When a county court acquires only appellate jurisdiction in a given suit, it
may not, absent authorization by statute or rule, determine any matter acquired by
virtue of its original jurisdiction in that same suit. See id. at 780.
          “An eviction suit does not bar a suit for trespass, damages, waste, rent, or mesne
profits.” Tex. Prop. Code Ann. § 24.008 (Vernon 2000). Additionally, “[a]
judgment or a determination of fact or law in a proceeding in . . . justice of the peace
court is not res judicata and does not constitute a basis for estoppel by judgment in a
proceeding in a . . . statutory county court.” Tex. Civ. Prac. & Rem. Code Ann. §
31.005 (Vernon 1997). Accordingly, a forcible-detainer suit in justice court may run
concurrently with another action in another court. See id.; Meridien Hotels, Inc., 97
S.W.3d at 737. That is, a forcible-detainer action is cumulative of, not exclusive of,
other remedies that a party may have. McGlothlin, 672 S.W.2d at 233; Dormandy v.
Dinero Land & Cattle Co., L.C., 61 S.W.3d 555, 558 (Tex. App.—San Antonio 2001,
pet. dism’d w.o.j.); Rice, 51 S.W.3d at 709. As the Texas Supreme Court has stated,
“If all matters between the parties cannot be adjudicated in the justice court in which
the forcible entry and detainer proceedings are pending due to the justice court’s
limited subject matter jurisdiction, then either party may maintain an action in a court
of competent jurisdiction for proper relief.” McGlothlin, 672 S.W.2d at 233; accord
Rushing, 630 S.W.2d at 500.
                    b.       Application of the Law to the Facts
          Prior to consolidation, Nguyen alleged in the forcible-detainer suit (by counter-claim, cross-claim, or third-party claim asserted for the first time on appeal to the
county court at law) that (1) Duong had tortiously interfered with her contractual
relations; (2) Tu had breached her fiduciary duty to Nguyen; (3) Tu, Duong, and HKDI
had unfairly competed with her; and (4) Tu, Duong, and HKDI had conspired to evict
her. She also sought actual damages of “less than $100,000,” exemplary damages, and
attorney’s fees.
          Under the law set out above, the county court at law had no subject-matter
jurisdiction over these claims to the extent that it was exercising its appellate
jurisdiction over the forcible-detainer suit appealed from the justice court. None of
the matters that Nguyen pleaded concerned the right to immediate possession. See
Tex. R. Civ. P. 746 (providing that right to possession is sole issue determined in
forcible-detainer or forcible-entry suit). Neither were they an attempt to collect rent. 
See Tex. R. Civ. P. 738 (allowing suit for rent to be adjudicated with forcible-detainer
suit, provided that rent sought is within justice court’s jurisdiction). Additionally, as
she had pleaded her tort claims, Nguyen did not expressly seek, or limit her damages
to, damages “suffered for withholding or defending possession of the premises during
the pendency of the appeal.”


 Tex. R. Civ. P. 752; see Krull, 879 S.W.2d at 322
(holding that, under rule 752, damages unrelated to maintaining or obtaining
possession of disputed premises may not be joined with forcible-detainer suit in
county court). Because she did not seek rule-752 damages—which pleading would
have allowed her to seek more than the $5,000 amount-in-controversy limit applicable
to many appeals from justice court


—the fact that Nguyen sought up to $100,000 also
took her tort claims outside of the county court’s appellate jurisdiction. Compare Tex.
Gov’t Code Ann. § 27.031(a)(1) (setting amount-in-controversy civil jurisdiction of
justice courts at $5,000 maximum, excluding interest) with id. § 25.0003(c)(1)
(Vernon 2004) (setting amount-in-controversy civil jurisdiction of statutory county
courts at $100,000 maximum, excluding interest, statutory or punitive damages or
penalties, and attorney’s fees and costs). Finally, exemplary damages do not fall
within those damages authorized in forcible-detainer suits. See Tex. R. Civ. P. 746,
752. Simply put, there is no way to construe Nguyen’s counter-claims, cross-claims,
and third-party claims that she asserted in the forcible-detainer suit before
consolidation so that the county court could have exercised jurisdiction over them.



          2.       The Claims Pending or Asserted After Consolidation
          It is, therefore, clear that the trial court had no subject-matter jurisdiction to
consider any of Nguyen’s counter-claims, cross-claims, or third-party claims that she
had asserted in the forcible-detainer suit before consolidation. The question remains,
however, whether the trial court could (or whether it had jurisdiction to) consolidate
the tort suit, in which it exercised original jurisdiction to entertain these types of
claims, with the forcible-detainer suit, in which it lacked such jurisdiction.


 That is,
could the trial court do through the back door what it could not do through the front?
          Consolidation is a procedural device that a court may utilize at its discretion
upon motion, upon stipulation, or sua sponte. See 3 Roy W. McDonald & Elaine
A. Grafton Carlson, Texas Civil Practice § 17:25, 775 (2d ed. 2000) [hereinafter
“McDonald & Carlson”]. Texas Rule of Civil Procedure 174(a) provides:
When actions involving a common question of law or fact are pending
before the court, it may order a joint hearing or trial of any or all the
matters in issue in the actions; it may order all the actions consolidated;
and it may make such orders concerning proceedings therein as may tend
to avoid unnecessary costs or delay.
Tex. R. Civ. P. 174(a). Consolidation furthers judicial economy by combining actions
that involve a common question of law or fact to mitigate the expense associated with
litigation, to eliminate the proliferation of suits, and to expedite the judicial process. 
See McDonald & Carlson, supra, at 775–76; see also Owens Corning Fiberglass
Corp. v. Martin, 942 S.W.2d 712, 716 (Tex. App.—Dallas 1997, no writ) (“In
deciding whether to consolidate, the trial court must balance the judicial economy and
convenience that may be gained by the consolidation against the risk of an unfair
outcome because of prejudice or jury confusion.”). “The trial court may consolidate
actions that relate to substantially the same transaction, occurrence, subject matter, or
question.” Martin, 942 S.W.2d at 716. Rule 174(a) “does not require that all of the
questions of law or fact be common to each of the cases to be consolidated. All that
is required is that the two actions involve one or more common questions of
significance. This is especially true if the parties are identical.” 7 William V.
Dorsaneo III, Texas Litigation Guide § 112.02[1] (1999) [hereinafter
“Dorsaneo”]. However, if the parties and issues differ, then consolidation is
improper. McDonald & Carlson, supra, 783–84. We review a consolidation order
for abuse of discretion. Allison v. Ark. La. Gas Co., 624 S.W.2d 566, 568 (Tex. 1981).
          Two types of consolidation exist: true consolidation and consolidation for trial. 
McDonald & Carlson, supra, at 775; see also 7 Dorsaneo, supra, at
§ 112.01[1][a]. True consolidation, as occurred here, involves merging separate suits
into a single proceeding under one docket number. McDonald & Carlson, supra,
at 775. “‘When actions are properly consolidated they become merged and are
thereafter treated as one suit. . . .’” Perry v. Del Rio, 53 S.W.3d 818, 825 n.6 (Tex.
App.—Austin 2001) (quoting 1 Tex. Jur. 3d Actions § 77 (1993)), pet. dism’d, 66
S.W.3d 239 (Tex. 2001); see Rust v. Tex. & Pac. Ry. Co., 107 Tex. 385, 387, 180 S.W.
95, 95 (1915) (“In the present case, the order of consolidation having been properly
made, there remained no separable cause of action. It became but one suit . . . .”). 
Therefore, when a court orders true consolidation of two or more cases, the actions are
merged and thereafter proceed as a single action, as though they had been filed
initially as a single suit. See Perry, 53 S.W.3d at 825 n.6; Rust, 107 Tex. at 387, 180
S.W. at 95; McDonald & Carlson, supra, at 775. 
          On the one hand, it is undisputed that each of the two county courts involved
here sat in the same county; that each had subject-matter jurisdiction over forcible-detainer appeals generally; and that each also had subject-matter jurisdiction over the
general types of damage claims and declaratory relief that Nguyen sought (putting
aside for a moment HKDI and Duong’s challenges to the aggregate amounts in
controversy). See Tex. Gov’t Code Ann. §§ 25.003(a), (c)(1), 25.1031(a),
25.1032(a) (Vernon 2004). When the transferee county court has subject-matter
jurisdiction over the matters sought to be transferred to it in a consolidation (which the
county civil court at law here did, in the abstract), consolidation is generally a
procedural matter, rather than a jurisdictional one. Cf. Montgomery v. Willbanks, 202
S.W.2d 851, 853 (Tex. Civ. App.—Fort Worth 1947, writ ref’d n.r.e.) (“There is no
lack of jurisdiction involved here, because the district court acquired jurisdiction of
the issues presented in the two cases as they were filed, and did not lose jurisdiction
simply because he ordered them tried together.”); McNeny v. R.R. Comm’n, 96 S.W.2d
96, 98 (Tex. Civ. App.—Austin 1936, no writ) (indicating that question of joinder is
not jurisdictional, and analogizing to consolidation); cf. also Allison, 624 S.W.2d at
568 (indicating that joinder and consolidation rulings are reviewed for abuse of
discretion).
          On the other hand, by virtue of their consolidation, the two lawsuits in this case
merged and proceeded as if they had been initially filed as a single action. See Perry,
53 S.W.3d at 825 n.6; Rust, 107 Tex. at 387, 180 S.W. at 95; McDonald & Carlson,
supra, at 775. That means that Nguyen’s claims—over some of which the court in the
forcible-detainer suit did not have jurisdiction when they were asserted there as cross-claims, counter-claims, and third-party claims—were subsequently allowed to be
raised in the consolidated suit by virtue of the consolidation. Consolidation in these
circumstances thus accomplished what the same court, when presiding over the
forcible-detainer appeal, lacked subject-matter jurisdiction to do.
          We conclude that consolidation in these circumstances constitutes error.


 
Forcible-detainer suits are intended to provide a speedy, summary, and inexpensive
determination of the right to immediate possession, and the rules accomplish this goal
by allowing the parties to litigate only limited matters. See, e.g., Meridien Hotels, Inc.,
97 S.W.3d at 737; see also Tex. R. Civ. P. 739, 740, 745, 746, 748, 749. This object
is thwarted by allowing through consolidation what is not allowed through assertion
of claims in the forcible-detainer suit itself.
          There is authority to support our conclusion. In Texas–Mexican Railway Co.
v. Cahill, a forcible-detainer suit was initiated in justice court, and appeal was taken
to the county’s district court.


 See id., 23 S.W. 232, 232 (Tex. Civ. App.—Galveston
1893, writ ref’d). In overruling the appellant’s challenge to the denial of its motion
to consolidate the forcible-detainer suit with another suit involving the same appellee
pending in the same court, this Court explained, in pertinent part:
[T]he motion to consolidate was properly refused. The appellee’s suit,
as we have seen, was brought under the statute which provides a remedy 
for the recovery of the possession of real estate when the premises are in
the quiet occupancy of one, and they are forcibly entered by another, or
where a lessee, after the expiration of his lease, refuses to restore
possession to his lessor. The statute provides a speedy and efficient
remedy for restoring possession to him who is wrongfully deprived of the
same, and no inquiry as to the title to, or the superior right of either party
to the suit or that of any third person in, the property, is permitted. The
[other suit] was a suit of trespass to try title to the lot in question. To
permit the consolidation of such suits would be contrary to the obvious
policy of the law, and in most cases defeat the object of the statute,—the
prompt adjudication of the right of possession to the premises, without
reference to the right of title to the property.

Id. at 232 (emphasis added). We follow the reasoning and conclusion of our Court in
Cahill to hold in this case that the trial court erred in consolidating the tort suit and the
forcible-detainer suit.


 See id.
 
C.      The Remedy
          When a court lacks subject-matter jurisdiction over some claims, but not others,
it should sever or dismiss those claims over which jurisdiction is lacking. See Thomas
v. Long, 49 Tex. S. Ct. J. 532, 534 (Tex. Apr. 21, 2006) (“[I]t is proper for a trial court
to dismiss claims over which it does not have subject matter jurisdiction but retain
claims in the same case over which it has jurisdiction.”) (citing Am. Motorists Ins. Co.
v. Fodge, 63 S.W.3d 801, 805 (Tex. 2001)); Fandey v. Lee, 880 S.W.2d 164, 169 (Tex.
App.—El Paso 1994, writ denied) (in dictum, indicating that counter-claims for fraud
and to quiet title were properly severed from forcible-detainer suit).
          HKDI and Duong moved, before consolidation, to strike or to sever all of
Nguyen’s claims in the forcible-detainer suit. Although severance rulings are
reviewable for abuse of discretion,


 it is an inherent abuse of discretion to misapply
the law—such as, for example, when a court exercises jurisdiction over a matter over
which it has none. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); see also
Tex. Natural Res. Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002)
(providing that question of whether court has subject-matter jurisdiction is question
of law). Additionally, to the extent that the court’s rulings (here, the motion to strike
or to sever) allowed the exercise of jurisdiction over matters over which it lacked
jurisdiction, we review those rulings de novo. See Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 228 (Tex. 2004) ( “Appellate courts reviewing a challenge
to a trial court’s subject matter jurisdiction review the trial court’s ruling de novo.”).
          Furthermore, HKDI and Duong opposed the consolidation.


 We have already
concluded that consolidating these cases was at least contrary to the law. Although
the standard of review for consolidation orders is abuse of discretion,


 the trial court
necessarily abused its discretion here by acting contrary to the law. See Walker, 827
S.W.2d at 840. 
          These errors require reversal and remand. The court’s error in denying the
motion to strike or to sever resulted in fundamental error because it allowed the court
to exercise subject-matter jurisdiction over certain claims that it lacked jurisdiction to
consider in the forcible-detainer suit. See Mapco, Inc. v. Carter, 817 S.W.2d 686, 687
(Tex. 1991) (holding, “[L]ack of jurisdiction is fundamental error and may be raised
for the first time before this court.”). 
 
          As for the consolidation order, if consolidation is a jurisdictional matter under
these circumstances, then the trial court’s improperly having consolidated these cases
was also fundamental error, which would render the consolidation order void. See 
Browning v. Placke, 698 S.W.2d 362, 363 (Tex. 1985) (indicating that judgment is
void when, among other things, it is apparent that court rendering judgment “had . . .
no jurisdiction of the subject matter”); see also In re Dickason, 987 S.W.2d 570, 571
(Tex. 1998) (holding that order rendered after trial court’s plenary jurisdiction had
expired was void); cf. In re Cornyn, 27 S.W.3d 327, 332 (Tex. App.—Houston [1st
Dist.] 2000, orig. proceeding) (“Mandamus lies over an interlocutory or temporary
order that the court had no jurisdiction to make.”). If, on the other hand, the court’s
ruling consolidating the cases was erroneous, but not void for lack of jurisdiction, that
error is harmful. See Tex. R. App. P. 44.1. 
 Texas Rule of Appellate Procedure 44.1 provides:
(a)Standard for Reversible Error. No judgment may be reversed on appeal
on the ground that the trial court made an error of law unless the court of
appeals concludes that the error complained of:
 
(1)probably caused the rendition of an improper judgment; or
 
(2)probably prevented the appellant from properly presenting
the case to the court of appeals.

Id. 
 
          The harm arising from having to participate in a jury trial before one can obtain
what is supposed to be an inexpensive, speedy, and summary ruling on the right to
immediate possession is evident. HKDI filed the forcible-detainer suit in July 2003,
immediately confessed judgment, and appealed to the county court. Nguyen asserted
her tort counter-claims, cross-claims, and third-party claims on October 3, 2003. The
trial court consolidated the two suits that same month, implicitly overruling HKDI’s
motion to strike or to sever Nguyen’s tort claims in the forcible-detainer suit. Trial did
not begin until December 2, and it ended on December 11; there were seven days of
trial proceedings. The trial court did not render judgment adjudicating the right to
possession until April 30, 2004. This significant delay in determining the mere right
to immediate possession was caused by the consideration of tort claims over which the
trial court lacked subject-matter jurisdiction, when the issue should have been decided
inexpensively, speedily, and summarily. See, e.g., Meridien Hotels, Inc., 97 S.W.3d
at 737; see also Tex. R. Civ. P. 739, 740, 745, 746, 748, 749. Therefore, if the
consolidation ruling was non-jurisdictional error, that error was harmful. See Tex. R.
App. P. 44.1.
          Given our disposition, we need not reach HKDI and Duong’s challenges (1)
under issue one based on lack of personal jurisdiction over Duong; (2) under issue two
concerning the trial court’s having granted Nguyen leave to amend her pleadings to
assert waiver, estoppel, and mental-anguish damages; and (3) under issue three
concerning the legal sufficiency of the evidence supporting the jury’s findings on
Nguyen’s tort claims, damages, and attorney’s fees, which Nguyen asked us to reach
only if we overruled her challenges to the severance and consolidation rulings.
Tu’s Appeal
          In three issues, Tu contends that the trial court erred in rendering judgment
declaring that the lease and partnership assignments’ indemnity provisions made Tu
responsible for Nguyen’s attorney’s fees and awarding Nguyen $79,900 in attorney’s
fees against Tu, jointly and severally with HKDI and Duong. Tu bases her challenge
on three grounds: (1) the court declared that Tu and Nguyen’s lease assignment did
not breach the lease agreement with HKDI, which declaration allegedly eliminated the
sole basis for contractual indemnity; (2) alternatively, the claims alleged against
Nguyen did not fall within the indemnity agreements’ unambiguous terms; and (3)
Nguyen did not segregate evidence of her attorney’s fees.
          We have already determined that we must reverse the judgment and remand the
case for the trial court’s errors in having failed to sever Nguyen’s tort claims from the
forcible-detainer suit and in having consolidated the tort suit and the forcible-detainer
suit. Because the indemnity issue is likely to recur on remand, however, we consider
Tu’s challenges that are questions of law: whether the declaration that no breach
occurred negated the sole basis for indemnity and whether the claims asserted against
Nguyen fell within the indemnity agreements’ terms. See Wachendorfer v.
Wachendorfer, 615 S.W.2d 852, 854 (Tex. Civ. App.—Houston [1st Dist.] 1981, no
writ) (despite having sustained point of error requiring remand, considering matters
that would occur on remand).
A.      Pertinent Facts
          Two sets of indemnity provisions were at issue in the consolidated suit. The
first set was included in the partnership assignment between Tu and Nguyen, and the
second set was included in the lease assignment between them. We need to examine
only the lease assignment’s indemnity provision:
Assignor [Tu] hereby indemnifies Assignee [Nguyen] and agrees
to hold [Nguyen] harmless from and against any and all claims, demands,
obligations, liabilities, costs, losses and expenses, including without
limitation attorney’s fees resulting from or arising out of all provisions,
agreements, obligations, covenants and conditions which are or were
provided or required to be paid, performed, discharged, and/or observed
prior to the effective date of this Assignment by [Tu] under or in
connection with the Lease [between HKDI and Tu and Nguyen].

(Emphasis added.)
          In her pleadings filed in the consolidated suit, Nguyen asserted an indemnity
claim against Tu, alleging that “[Tu’s] actions would constitute a breach of contract
and would bound [sic] her to an indemnification agreement to [Nguyen] and the
partnership” and that “[Nguyen] is entitled to indemnification from [Tu] for damages
for attorney fee [sic].” 
          The jury question relevant to our discussion asked if “the ‘assignment’ from Tu
to [Nguyen] was ‘excused’” by waiver, estoppel, or duress. Because this jury question
concerned affirmative defenses,


 the question, its instructions, and its definitions
impliedly assumed that the execution of the lease assignment without HKDI’s prior
written consent violated the terms of the lease agreement with HKDI.


 The final
judgment then recited as follows:
The Court finds that, in interpreting the lease agreement as a
whole, the lease agreement was not breached by [[Nguyen’s] and [Tu’s]
compliance with a Court Ordered assignment of [Tu’s] lease interest in
relation to the dissolution of the partnership which was done without the
prior written consent of [HKDI].
 
. . . .
 
The jury returned a verdict as to [Nguyen’s] affirmative defenses that the
Court Ordered assignment of the lease interest, if the assignment was a
breach of the [lease] agreement, was excused.
 
B.      Standard of Review and the Law
          We review questions of law like those discussed here de novo. See, e.g., State
v. Delany, 197 S.W.3d 297, 300 (Tex. 2006); MCI Telecomms. Corp. v. Tex. Utils. 
Elec. Co., 995 S.W.2d 647, 650–51 (Tex. 1999) (instructing that interpretation of
unambiguous contract is a question of law, which is reviewed de novo). Courts “may
not expand the parties’ rights or responsibilities beyond the limits agreed upon by
them in the [indemnity] contract.” Ideal Lease Serv., Inc. v. Amoco Prod. Co., 662
S.W.2d 951, 953 (Tex. 1983); see also Crowder v. Scheirman, 186 S.W.3d 116, 119
(Tex. App.—Houston [1st Dist.] 2005, no pet.) (“The supreme court requires that
indemnity agreements be strictly construed to give effect to the parties’ intent as
expressed in the agreement.”) (citing Ideal Lease Serv., Inc., 662 S.W.2d at 953). 
C.      The Effect of the Judgment’s Recitation That No Breach Occurred
          In her first issue, Tu argues that the judgment’s recitation that “the lease
agreement was not breached” negates any ground for indemnification. Specifically,
Tu contends that only a breach of the lease agreement with HKDI could trigger her
duty to indemnify Nguyen under the lease assignment between Tu and Nguyen. 
 
          We disagree. First, the judgment’s recitation on which Tu relies indicates that
the court found no breach not because the failure to obtain HKDI’s prior written
consent did not violate the lease agreement with HKDI, but instead because that
violation was excused. The judgment’s recitation that “the lease agreement was not
breached by [Nguyen’s] and [Tu’s] compliance with a Court Ordered assignment of
[Tu’s] lease interest,” along with its reference to the jury’s affirmative-defense
findings, can be read as a finding that duress excused the violation of the lease
agreement. (Emphasis added.) Accordingly, viewed in context, the judgment’s
recitation on which Tu relies is not a finding that she did not violate any duties under
the lease assignment.
          Additionally, the scope of the lease assignment’s indemnity provision was
broad. Tu reads this indemnity provision restrictively, as being triggered only if Tu
and Nguyen were held liable for having breached the lease agreement with HKDI. In
contrast, the lease assignment’s indemnity provision actually read as follows:
Assignor [Tu] hereby indemnifies Assignee [Nguyen] and agrees
to hold [Nguyen] harmless from and against any and all claims, demands,
obligations, liabilities, costs, losses and expenses, including without
limitation attorney’s fees resulting from or arising out of all provisions,
agreements, obligations, covenants and conditions which are or were
provided or required to be paid, performed, discharged, and/or observed
prior to the effective date of this Assignment by [Tu] under or in
connection with the Lease [between HKDI and Tu and Nguyen].

(Emphasis added.) The indemnity provision was thus triggered by, among other
things, costs that resulted from or arose out of any obligation (etc.) that Tu had to
perform under the lease agreement with HKDI. The scope of this language was thus
broader than simply costs resulting from liability for the lease agreement’s breach. 
          Tu was the party assigning her leasehold interest to Nguyen. The lease
agreement required that “Tenant [Tu and Nguyen] . . . not assign this Lease, or any
interest therein, . . . without first obtaining the written consent of [HKDI]” and that
“[Tu and Nguyen] shall not sell, convey, or assign any interest in the corporation [sic]
without prior written approval from [HKDI].” It is undisputed that HKDI’s written
consent to the lease assignment was not obtained prior to the assignment’s execution. 
That failure came within the scope of the indemnity provision—whether or not the
failure was ultimately excused by waiver, estoppel, or duress. The judicial recitation
that “the lease agreement was not breached” did not, therefore, negate the contractual
basis for indemnity.
D.      The Challenge That the Claims Against Nguyen Fell Outside the Indemnity
Agreement’s Scope

          The lease assignment’s indemnity provision required Tu to indemnify Nguyen
only for failed obligations (etc.) under the lease agreement that Tu had to perform
“prior to” the lease assignment’s execution. In her second issue, Tu alternatively
argues that the failure to obtain HKDI’s prior written consent to the lease assignment
could not have occurred before the lease assignment was executed because the failure
occurred at the time of the assignment’s execution. We reject this argument. 
Although the lease agreement with HKDI was not violated until the moment that Tu
and Nguyen signed the lease assignment, the obligation that Tu, as assignor, was
required to perform under the lease agreement with HKDI was to obtain HKDI’s prior
written consent to the assignment, which failure necessarily occurred prior to the lease
assignment’s execution.
          We overrule the second issue.
E.      Summary
          We overrule Tu’s first two issues. Our holdings concerning those issues will
guide the trial court on remand should the indemnification issue again arise. We
decline to reach Tu’s third issue.
Conclusion
          We reverse the judgment of the trial court and remand the case.
                                                                                                                                     
 
                                                             Tim Taft
                                                             Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.